IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GLADYS DILLARD,

        Plaintiff,

v.                                  CIV 02-0763 KBM/LAM

VILLAGE OF RUIDOSO DOWNS, et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Defendants' Second Motion To Amend Answer *(Doc. 43)* and Motion for Summary Judgment *(Doc. 38)*. Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b), the parties have consented to have me serve as the presiding judge and enter final judgment. The Court has reviewed the motions, the memoranda submitted by the parties and the relevant authorities. The Court, having ruled on the motions at the telephonic pre-trial conference now sets forth in writing the rationale for the decisions.

*Second Motion to Amend Answer*

Defendants want to amend their answer again, this time to raise a statute of limitations defense to the Title VII claim. Judge Galvan entered a "scheduling orders" setting January 15, 2003 as the deadline for amendments to defendant pleadings and March 31, 2003 as the close of discovery. Because all of the depositions attached to the summary judgment materials were taken January 7th or 8th, it appears that discovery was completed before the amendment deadline.

On January 17, 2003, Defendants filed their first motion to amend their answer to plead

qualified immunity which was granted.  On April 9, 2003, just about the time motions were to be filed, Defendants sought to amend for a second time – this time to raise a statute of limitations defense.  Their reasons for failing to raise statute of limitations earlier are contradictory and vague.  They first state that the failure to raise the statute of limitations defense was "inadvertent," implying that they knew of the defense and simply forgot to raise it.  But they also claim that the defense only came "to light in the course of discovery surrounding the facts pertinent to the defense, and research into the applicable period in which the Plaintiff had to file a charge of Discrimination."  *See Doc. 43.*

Defendants want to apply the liberal FED. R. CIV. P. 15(a) "freely given" standard for amendment.  Plaintiff maintains, however, that the stricter FED. R. CIV. P. 16(b) "good cause" standard should apply because of the scheduling order's deadline.  Because Rule 16(b) specifically applies to modification of a previously-entered scheduling order, the more specific Rule 16 should govern rather than the more general Rule 15.

Defendants assertions do not demonstrate "good cause" for permitting amendment of the answer.  Defense counsel should have known about the facts applicable to the statute of limitations defense when they took Plaintiff's deposition because it was there that they tried to pin her down on exact dates.  Plaintiff's deposition was at least a week before the deadline Judge Galvan originally set, yet they did not ask to add that defense in their first motion to amend.  Even assuming that counsel did not have a transcript until around February 14th when Plaintiff signed her "correction pages" to the transcript of her deposition,  *see Doc. 46,* Exh. 4, by March 10, 2003, defense counsel notified Plaintiff they would seek to raise statute of limitations yet waited another ***four*** weeks before filing the instant motion.  It appears that the failure to raise the defense

2

in a timely fashion was just neglect *and/or* ignorance of the law, and as such does not constitute good cause.

Even if I were to apply the more liberal "freely given" standard of Rule 15 because Judge Galvan's scheduling order is somewhat of an aberration from general court practice, it is well-settled that the amendment should not be allowed if doing so would be futile.

The gist of Plaintiff's allegations involve a hostile environment situation. She maintains that the mayor made several sexual overtures to her that made her uncomfortable, and she rebuffed all of them. Plaintiff alleges that when the mayor finally realized she would not reciprocate, he became "abusive" to her, causing her stress and making it difficult to perform her job effectively, and then decided to terminate her. Although Plaintiff is somewhat vague on the timing and details of the mayor's alleged conduct, she survives summary judgment on the limitations defense under the Supreme Court decision in *National*.

Plaintiff filed her discrimination charge with the New Mexico Human Rights Division on August 24, 2001. Thus, any incidents that occurred between October 30, 2000 and August 24, 2001 would fall within the applicable 300-day limitations period. Defendants contend that the only incidents of sexual harassment Plaintiff complains of occurred prior to October 30, 2000, and therefore she did not timely file. However, only discrete and separately-actionable incidents of discrimination such as termination or failure to hire that fall outside the 300-day limit are barred as a basis of recovery. *See National RR Passenger Corp. v. Morgan,* 536 U.S. 101 (2002). Even so, the barred incidents would come in as background evidence. *See id.* at 113.

Hostile work environment claims are

> different in kind from discrete acts [because their] very nature

3

> involves repeated conduct. . . . The "unlawful employment
> practice" therefore cannot be said to occur on any particular day. It
> occurs over a series of days or perhaps years and, in direct contrast
> to discrete acts, a single act of harassment may not be actionable on
> its own.

*Id.* at 115. As long as one of the acts complained of occurs within the 300-day period, "the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* at 117. Moreover, Plaintiff is in no way barred from recovering damages "for that portion of the hostile environment that falls outside the period for filing a timely charge." *Id.* at 119. Instead, other sections of Title VII deal with limits on recoveries. *Id.*

At least two and perhaps three of the alleged incidents of sexual harassment fall after October 30, 2000 – an unwanted hug, during a drive encountering inclement Mayor suggests "we better spend the night," and the comment that he'd better "get rid of Hazel [his wife]." Furthermore, the perceived change in attitude and termination fall within the 300-day window. As such, the limitations defense is unavailable and the proposed amendment would be futile.

### *Retaliation Claim Fails to Survive Summary Judgment*

"To establish a *prima facie* case of retaliation, [Plaintiff] must establish that: (1) [s]he engaged in protected opposition to discrimination; (2) [s]he suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action." *O'Neal v. Ferguson Constr. Co.,* 237 F.3d 1248, 1252 (10th Cir. 2001). I agree with Defendants that Plaintiff could not succeed on this claim at trial by a preponderance of the evidence because: (1) Plaintiff concedes she has no evidence other than a "perceived change in attitude" that the mayor knew she had complained of sexual harrassment; and (2) the four-month time frame between Plaintiff's complaint to the Trustees and her termination is too

4

attenuated to support the inference of causation. To permit the retaliation claim to go forward would invite the jury to engage in pure speculation.[1]

### *Sexual Harassment Claim Will Proceed to Trial*

To survive summary judgment, Plaintiff must show that the harassing conduct is either "sufficiently severe or pervasive to alter [Plaintiff's] employment and create an abusive working environment." *Turnbull v. Topeka State Hosp.,* 255 F.3d 1238, 1243 (10th Cir. 2001) (internal quotations omitted), *cert. denied,* 535 U.S. 970 (2002). Plaintiff must show that the harassing conduct was "both objectively and subjectively abusive," *id.,* at 1243 (internal quotations omitted), and Plaintiff "must produce evidence that she was the object of harassment because of her gender," *Penry v. Federal Home Loan Bank of Topeka,* 155 F.3d 1257, 1261 (10th Cir. 1998), *cert. denied,* 526 U.S. 1039 (1999). "'If the nature of an employee's environment, however unpleasant, is not due to her gender, she has not been the victim of sex discrimination as a result of that environment.'" *Gross v. Burggraf Const. Co.,* 53 F.3d 1531, 1537 (10th Cir. 1995) (quoting *Stahl v. Sun Microsystems, Inc.,* 19 F.3d 533, 538 (10th Cir. 1994)). "Normal job stress does not constitute a hostile or abusive work environment," nor are personality conflicts between employees the business of federal courts. *Trujillo v. Univ. of Colo. Health Sciences Ctr.,* 157

---

[1] *E.g., Freeman v. Santa Fe Ry.,* 2000 WL 1227863 at n.3 (10th Cir. 2001) ("We do not decide whether two months and six days is a sufficiently short period of time, standing alone, to establish a causal connection. *See Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1179 (10th Cir. 1999) (declining to decide whether two months and one week is sufficient to support a prima facie case of retaliation, and noting that we have held one and one-half months a sufficiently short period of time, by itself, to establish causation, and have also held three months, standing alone, too remote to establish causation). Even assuming that two months and six days between the protected activity and the adverse action is too extended a time period to establish causation, there is additional evidence inferring a retaliatory motive and establishing causation. *See id.* ("unless the termination is very closely connected in time to the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation").

F.3d 1211, 1214 (10th Cir. 1998).  "We cannot vilify every supervisor that implements a policy with which an employee disagrees or that monitors [the] employees' conduct." *Id.*; *see also Bateman v. United Parcel Service, Inc.,* 31 Fed.Appx. 593, 597 (2002).

There is no "'mathematically precise test' for determining whether the conduct is sufficiently severe or pervasive" to constitute a hostile work environment. *See Turnbull,* 255 F.3d at 1243 (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 22 (1995).  Rather, the court must consider the entire record as a whole, and all of the circumstances and entire context in which the conduct occurred.  Factors to consider include "the frequency of the discriminatory conduct; its severity;  whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (internal quotations omitted).  Given the allegations of unwanted physical contact and that the mayor placed money on Plaintiff's desk with the suggestion that she buy something from Victoria's Secrets for their trip to an Albuquerque conference, I will deny summary judgment at this time.

Moreover, if the mayor conditioned Plaintiff's continued employment on her submission to his advances, the Plaintiff may have a viable *quid pro quo* claim.  Defendant argues that a demand for sexual favors has to approximate something explicit and persistent.  A case out of Kansas, however, discusses in some detail the Tenth Circuit law which seems to say that an implied threat of adverse job consequences is sufficient. *Aldridge v. Kansas,* 1997 WL 614323 (D. Kan. 1997). A fairly recent Tenth Circuit case does not disabuse that notion.  Rather, that case turned on the absence of an adverse employment action. *See Miller v. Regents of Univ. of Colo.,* 1999 WL

506520 (10th Cir. 1999).[2]

Although I am denying summary judgment on the claims of sexual harassment and discrimination, Defendants may ask me to revisit the issue on a motion for a judgment as a matter of law once all of the evidence is in regarding the context of these encounters. *See O'Shea v. Yellot Technology Servs., Inc.,* 185 F.3d 1093, 1097-98 (10th Cir. 1999) ("[f]acially neutral abusive conduct can support a finding of gender animus sufficient to sustain a hostile work environment claim when that conduct is viewed in the context of other, overtly gender-discriminatory conduct."); *Penry,* 155 F.3d at 1261 ("actionable conduct is not limited to behavior motivated by sexual desire") (citing *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 80 (1998)).

Wherefore,

**IT IS HEREBY ORDERED** that  Defendants' Second Motion To Amend Answer *(Doc. 43)* is **denied**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment is

---

[2]  As a  recent Tenth Circuit decision describes the *quid pro quo* burdens in a discharge situation,

> [w]hen a plaintiff proves that a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands, he or she establishes that the employment decision itself constitutes a change in the terms and conditions of employment that is actionable under Title VII. . . .   A defendant-employer may refute such a claim of *quid pro quo* harassment in either of two ways:  with proof that no negative employment action was taken by the employer, i.e., that the employee resigned, for example; or by establishing that the decision to terminate was made for legitimate business reasons and not because the employee refused to submit to sexual demands.  The first defense challenges the employee's claim of discharge; the second challenges the employee's claim that discharge occurred because of refusal to submit to sexual demands.

*Smith v. Cashland, Inc.,* 193 F.3d 1158, 1160 (10th Cir. 1999) (internal quotations and citations omitted).

7

**granted in part as described herein** *(Doc. 38)*.  In all other respects, the motion is **denied**.

_____
UNITED STATES MAGISTRATE JUDGE